IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KEVIN ROBERT MANNING, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. PWG-19-2450 |
| WARDEN CASEY M. CAMPBELL, and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND | * * | |
| Respondents. | * | |

***

## MEMORANDUM OPINION

Petitioner Kevin Robert Manning filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his 2014 conviction in the Circuit Court for Montgomery County. ECF No. 1. Respondents assert that the Petition is subject to dismissal because it raises only procedurally defaulted claims. ECF No. 4. Mr. Manning filed a reply. ECF No. 6. No hearing is necessary to resolve the matter. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons set forth below, the Court denies Mr. Manning's Petition. The Court also declines to issue a certificate of appealability.

## BACKGROUND

Kevin Manning was convicted of two counts of sexual abuse of a minor on December 10, 2015.[1] ECF No. 4-1 at 22. The Court of Special Appeals summarized the underlying facts of the crime as follows:

---

[1] Mr. Manning's first jury trial, held on March 16, 2015, resulted in a mistrial because of a hung jury. ECF No. 4-1 at 34-35.

E.S.,[2] born in January 2000, who was fifteen years old at the time of trial, testified that she was six or seven years old when [Manning] began dating her mother, Er.S., after her parents' separation. [Manning] began to abuse her sexually when she was eight or nine years old, and she and her family were living in Anne Arundel County.[3] When the family moved to a mobile home in Washington County in February 2013, Er.S. and [Manning] were not together as a couple, but they reunited shortly after the move. Thereafter, [Manning] stayed with Er.S. in the mobile home every other weekend, when E.S and her younger brother were with their father in Pennsylvania; he generally arrived after work on Friday evening and left on Monday morning to go to work. On approximately eight to ten occasions, however, E.S. was present during [Manning]'s weekend visits to the mobile home. Several weeks after his reconciliation with Er.S., [Manning] again began to abuse E.S. sexually, either in her bedroom or on the living room couch where she sometimes slept. E.S. believed the abuse occurred on approximately 20 occasions between February 2013 and November 2013. On most occasions, she said, [Manning] got up very early on Monday mornings, before her mother's alarm went off at 5:00 a.m., and touched her until he heard her mother's alarm, or he had to leave for work. E.S. stated that [Manning] placed his fingers in her vagina and, on one occasion, he placed his penis in her vagina. E.S. confided the secret of the abuse to her best friend, S.M., but to no one else, as she was afraid [Manning] would hurt her or her mother. S.M. counseled E.S. to tell an adult, but E.S. said she did not think her mother would believe her. E.S. told S.M. every time the abuse occurred, which, according to S.M., was "pretty much every other week maybe after the weekends."[4] For some period of time, the accounts ceased and S.M. thought "everything was going to be okay." But, then E.S. confided in S.M. that [Manning] had abused her again. At that point, S.M. convinced E.S. to tell an adult. On December 11, 2013, E.S. slept at S.M.'s house and the girls went to school together on the morning of December 12, 2013. They asked to speak privately with their teacher, April Shupp, who was aware that E.S. had been having emotional problems. E.S. began to cry, whereupon, S.M. relayed E.S.'s story about being touched and raped by her mother's boyfriend until E.S. was able to take over the narrative. Shupp informed the school's principal, who contacted the Department of Social Services and the police. Washington County Sheriff's Office Detective Casey Swope[5] was dispatched to Hancock Middle/High School in response to a report that a female student had confided in a teacher that her mother's boyfriend sexually abused her. Swope contacted the Child Advocacy Center of the Department of Social Services and scheduled a forensic interview of E.S. with a

---

[2]     To protect the identity of the sexual abuse victim, the Court of Special Appeals referred to her and her family members and friends by their initials.
[3]     At the time of trial, charges were pending against Mr. Manning in Anne Arundel County based on allegations of sexual abuse of E.S. in that jurisdiction.
[4]     S.M. was also a witness to an incident that occurred after the girls had been swimming with Mr. Manning at a local creek. On that occasion, Mr. Manning commented to E.S., who was wearing spandex shorts and a sports bar, "Fucking trails is looking at you and then I realized whoa man, she's only 14."
[5]     During the course of the investigation of this matter, Detective Swope was unmarried and went by the name "Nogle."

> therapist. Swope witnessed the interview via closed circuit television.[6] Based on E.S.'s forensic interview, and Swope's interviews with Er.S., S.M., and another friend of E.S., Swope contacted [Manning] on December 12, 2013 and asked him to submit to questioning. [Manning] advised that he was not in the area but would contact Swope the following day; however, he did not make further contact with Swope. Swope filed charges against him shortly thereafter.

ECF No. 4-1 at 74-77.

A jury trial in the Circuit Court for Montgomery County resulted in a verdict finding Mr. Manning guilty on two counts of sexual abuse of a minor. He was acquitted on eight counts of sexual abuse of a minor and one count of sexual abuse of minor, continuing course of conduct against child. ECF No. 4-1 at 22. Mr. Manning was sentenced to serve 20 years. ECF No. 4-1 at 17-18. On direct appeal Mr. Manning raised two issues:

1. Whether the trial court erred in allowing Detective Swope to testify on redirect examination that E.S.'s mother corroborated her account; and

2. Whether the trial court erred in admitting E.S.'s statements to A.S. as a "prompt complaint" of sexual assault.

ECF No. 4-1 at 48. The Court of Special Appeals found that Mr. Manning's appeal lacked merit and affirmed his conviction. ECF No. 4-1 at 73-85. Mr. Manning filed a petition for writ of certiorari in the Maryland Court of Appeals, which was denied on May 22, 2017. ECF No. 4-1 at 95-102; ECF No. 4-1 at 94.

Mr. Manning sought post-conviction relief with the Montgomery County Circuit Court. ECF No. 4-1 at 95-102; 103-136. Mr. Manning's application asserted thirteen claims of ineffective assistance of counsel. After a hearing on November 13, 2018, the Circuit Court denied relief. ECF No. 4-1 at 9; 141-155. Mr. Manning filed an application for leave to appeal the Circuit Court's denial of his post-conviction application on February 15, 2019, appealing only one of the thirteen ineffective

---

[6] E.S. did not undergo a gynecological or hospital examination. E.S.'s mother recalled that the Child Protective Services' pediatrician believed that a physical examination would be more traumatic than beneficial, especially given the length of time since the last stated abuse of the child, during which any physical injuries likely would have healed.

3

assistance of counsel claims raised in his post-conviction application. ECF No. 4-1 at 156-165. The Court of Special Appeals issued an order on June 14, 2019 denying Mr. Manning's application. ECF No. 4-1 at 178-179.

On February 25, 2019, Mr. Manning filed a Writ of Innocence in the Circuit Court for Washington County. ECF No. 4-1 at 166-169. Mr. Manning argued that digital time sheets from his employment and one or more witness statements prove his alibi, phone records show the victim made false statements, and the victim's school records provide impeaching character evidence. The state argued that these documents did not qualify as newly discovered evidence under Maryland Rule 4-332(d)(6). ECF No. 4-1 at 170-176. The Circuit Court summarily dismissed the Writ on April 8, 2019. ECF No. 4-1 at 177.

Mr. Manning timely submitted this Petition on August 9, 2019. ECF No. 1.

## PROCEDURAL DEFAULT

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

The Fourth Circuit has explained:

> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id*. at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Id*. (quoting *Murray*, 477 U.S. at 488). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U S. 298, 314 (1995).

Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray v. Carrier*, 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id*.; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence. *See Buckner*

5

*v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006). Although Mr. Manning filed a Writ of Innocence in the Circuit Court for Washington County, he has not expressly raised actual innocence as a defense to procedural default.

## ANALYSIS

Mr. Manning raises the following claims in the Petition filed with this Court: (1) Charges were filed without a proper crime scene investigation or DNA evidence; (2) Ineffective assistance of counsel for failing to object to non-expert testimony; (3) Ineffective assistance of counsel for failure to object or request a mistrial when a document not in evidence was presented to the jury; (4) Ineffective assistance of counsel for failure to object to seating of a stacked jury. ECF No. 1 at 6–11.

The record reflects that Mr. Manning failed to present Grounds One and Four to any state court, either on direct appeal or in his post-conviction proceedings. As such, these claims are unexhausted. Since Maryland law permits only one state petition for post-conviction relief, Mr. Manning may no longer pursue either Ground One or Ground Four in state court. *See* Md. Code Ann., Crim. Proc. § 7-103(a). Accordingly, these claims are procedurally defaulted. *See Breard*, 134 F.3d at 619. Mr. Manning's post-conviction application included Ground Two and Ground Three, but his application for leave to appeal to the Court of Special Appeals neglected to include these claims. Accordingly, Ground Two and Ground Three are also unexhausted and procedurally defaulted. *See Pevia v. Bishop*, Civil. No. ELH-16-1223, 2019 WL 3412649, at *13 (D. Md. July 26, 2019) ("The unexhausted claims are procedurally defaulted, as [Petitioner] failed to present them in his application for leave to appeal and the state courts would now find that he cannot assert those claims.")

Mr. Manning contends that any procedural default should be excused because it was caused by the negligence of the attorneys that represented him on direct appeal, during post-conviction and during the appeal of his post-conviction application. ECF No. 6. Mr. Manning offers no other cause for the procedural default of his claims.

In *Martinez v. Ryan,* 566 U.S. 1 (2012), the United States Supreme Court recognized a "narrow exception" to "the constitutional rule that there is no right to counsel in collateral proceedings," holding that inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel. *Id.* The Court reasoned that "[w]hen an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claims" and such collateral proceedings are "in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance [of counsel] claim." *Id.* at 10-11.

However, the *Martinez* Court made clear that its holding did not expand the availability of relief for ineffective assistance of counsel in post-conviction proceedings beyond initial-review collateral proceedings. *See id.* at 15-16 (explaining that "*Coleman v. Thompson*, 501 U.S. 722 (1991) held that an attorney's negligence in a post-conviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial" and noting that "[t]he rule of *Coleman* governs in all but the limited circumstances recognized here"). The Court went on to state explicitly that its "holding ... [did] not concern attorney errors in other kinds of proceedings, including *appeals from initial-review collateral proceedings*, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id.* (internal citations omitted) (emphasis added). "[I]neffective assistance of *appellate* postconviction counsel ... do[es] not constitute cause for his

failure to exhaust under the limited exception in *Martinez*." *Mahdi v. Stirling*, 20 F.4th 846, 989 (4th Cir. 2021).

The *Martinez* exception cannot excuse the procedural default of Ground One because it is not an ineffective assistance of counsel claim. *Martinez* also does not excuse the procedural default of Ground Two and Ground Three because it does not apply to attorney error during appellate proceedings, *i.e.*, failure to include Ground Two and Ground Three in Mr. Manning's application for leave to appeal.

Thus, Ground Four is Mr. Manning's only claim that qualifies for analysis under the *Martinez* exception. A state prisoner may establish cause under *Martinez* by showing (1) that the defaulted ineffective-assistance-of-trial-counsel claim is "substantial," (2) that counsel in the initial state collateral-review proceeding was ineffective or absent, and (3) that state law required the ineffective-assistance-of-trial-counsel claim to be raised in the initial collateral-review proceeding as opposed to on direct review. *See Trevino v. Thaler*, 569 U.S. 413 (2013). A "substantial claim" is one that has "some merit" with respect to both prongs of *Strickland*. *See Martinez*, 566 U.S. at 14 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)); *Owens v. Stirling*, 967 F.3d 396, 423 (4th Cir. 2020).

When a petitioner alleges a claim of ineffective assistance of counsel, he must show that counsel's performance was deficient, and the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Id.* at 688; *see Harrington*, 562 U.S. 86, 104 (2011). The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting

*Strickland*, 466 U.S. at 690). The Supreme Court explains that the "first prong sets a high bar." *Buck v. Davis*, ___ U.S. ___, 137 S.Ct. 759, 775 (2017). Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the wide range of professionally competent assistance." *Id.* (internal quotation and citation omitted). The standard for assessing such competence is "highly deferential" and there is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669.

Second, to satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. A petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id*. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to post-conviction relief where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal

to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

In Ground Four, Mr. Manning complains that his trial counsel should have objected to the state's selection of older, professional females to sit on the jury. Mr. Manning argues that these jury members had "previous experience working with youth, such as life coaches, counselors or teachers." ECF No. 1-7. He also argues that trial counsel should have objected to the state's use of peremptory challenges on "Generation X-Blue Collar." *Id*.

The record reflects that the trial judge conducted voir dire of the jury venire. ECF 4-3 at 6-37. When the defense exercised a peremptory challenge on Juror 39, the state asserted a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), contending that the defense was discriminating against female jurors over the age of fifty. ECF No. 4-3 at 41-42. Mr. Manning's trial counsel responded that he excluded Juror 39 because she was a life coach and explained that the others were excluded because one was a teacher, and one was an investigator. Trial counsel believed these jurors would be prejudicial to Mr. Manning. *Id*. at 42. The defense was successful in defeating the state's *Batson* challenge. *Id*. After the twelve-person jury was seated, trial counsel consulted with Mr. Manning and advised the trial court that the defense was satisfied with the jury. *Id.* at 44.

The trial record indicates that Mr. Manning's trial counsel exercised his peremptory challenges to exclude the very types of jurors about which Mr. Manning complains—older females in certain professions. Trial counsel's response to the *Batson* challenge revealed his voir dire strategy, namely, to avoid certain jurors he believed would be most prejudicial to Mr. Manning's case. The record also reflects that Mr. Manning was consulted by trial counsel about the composition of the jury. *Strickland* requires that this Court defer to counsel's sound strategy decisions. 466 U.S. at 689. As for trial counsel's failure to object to the prosecution's use of peremptory challenges against

"Generation X" or "Blue Collar" jurors, *Batson*'s holding has not been extended to include discriminatory use of peremptory challenges against these classes of individuals.[7] The record establishes that counsel's performance was not deficient, Ground Four has no merit, and is therefore not a "substantial" claim of ineffective assistance of counsel. Accordingly, the *Martinez* exception does not apply and Ground Four is procedurally defaulted.[8]

## CERTIFICATE OF APPEALABILITY

When a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). This Court concludes that Mr. Manning has not made such a showing and declines to issue a certificate of appealability. Mr. Manning may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

A separate Order follows.

| 7/6/2022 | /S/ |
|---|---|
| Date | Paul W. Grimm |
| | United States District Judge |

---

[7] The extension of *Batson v. Kentucky*, 476 U.S. 79 (1986), to non-ethnic characteristics has been rejected. *See United States v. Santiago-Martinez*, 58 F.3d 422 (9th Cir. 1995) (obesity); *United States v. Pichay*, 986 F.2d 1259 (9th Cir. 1993) (youth; following *United States v. Crespa*, 825 F.2d 538, 545 (1st Cir. 1987) and *United States v. Jackson*, 983 F.2d 757, 762-63 (7th Cir. 1993)); *U.S. v. Harris*, 197 F.3d. 870 (7th Cir. 1999) (disability status). *See also, Purkett v. Elem*, 514 U.S. 765, 769 (1995) (men with beards and long hair). Age is not a protected category under *Batson* (*Sanchez v. Roden*, 808 F.3d 85. 90 (1st Cir. 2015); *United States v. Helmstetter*, 479 F.3d 750, 754 (10th Cir. 2007)).

[8] As noted above, Mr. Manning has not asserted actual innocence to excuse his procedural default. While Mr. Manning submitted a Writ of Innocence to the Circuit Court, he has not made any arguments or submitted any evidence to support an actual innocence claim.